UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| GENE R. BABCOCK, JR.<br><br>      Plaintiff,<br><br>    v.<br><br>SHERIFF JEFF C. CONNOR, MICHAEL L.<br>HARE, SR., BRANDON D. REICHARDT,<br>JORDAN E. GRIFFIN, DEPUTY MILLER,<br>HUGHES LOCHARD, and RACHELLE BRAUN,<br><br>      Defendants. | Case No. 21-cv-268-JPG |

**MEMORANDUM AND ORDER**

This matter comes before the Court on two motions for summary judgment. The first is filed by defendants Michael L. Hare, Sr., Brandon D. Reichardt, Jordan E. Huber (incorrectly referred to in the Complaint as Jordan Griffin), Deputy Miller, and Rachelle Braun (collectively, the "Jail Defendants") (Doc. 49). The second is filed by defendant Dr. Hughes Lochard (Doc. 50). Plaintiff Gene R. Babcock, Jr. has responded to the motions (Doc. 53), and Dr. Lochard has replied to that response (Doc. 55).

**I.     Background**

This case arose after Babcock, who had a prosthetic hip, was in the Madison County Jail ("Jail") from March 17 to 18, 2019. During his first evening at the jail, his prosthetic hip became dislocated, which caused him extreme pain. Jail staff took Babcock to the infirmary, and Dr. Lochard instructed staff by phone how to treat Babcock until he could see medical personnel the following morning. When Babcock was released from the jail on bond late in the afternoon of March 18, 2019, he went by ambulance to the hospital where his prosthetic hip was restored to its normal position (called a reduction). Babcock alleges the Jail staff who took him to the

infirmary and Dr. Lochard were deliberately indifferent to his serious pain caused by his dislocated hip in violation of the Fourteenth Amendment (Count I).  He also alleges the Jail had an unconstitutional policy of not allowing inmates to see a doctor unless the inmate had a life-threatening condition (Count II).

The Jail defendants ask for summary judgment on the grounds that they properly treated Babcock's hip pain as instructed by Dr. Lochard, that there is no evidence some of them were personally involved in any alleged deprivation, and that there is no evidence of a municipal policy that caused Babcock harm.  Dr. Lochard asks for summary judgment on the grounds that there is no evidence his care of Babcock was objectively unreasonable and that he is entitled to good faith immunity.  Babcock maintains there is a genuine issue of fact regarding whether his history of hip replacement surgery, his self-assessment that his hip "came out of place," his constant screams of agony, and the emergent and serious nature of a hip dislocation made the defendants' responses objectively unreasonable.

## II.     Summary Judgment Standard

Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Spath v. Hayes Wheels Int'l-Ind., Inc.*, 211 F.3d 392, 396 (7th Cir. 2000).  The Court must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in favor of that party.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Chelios v. Heavener*, 520 F.3d 678, 685 (7th Cir. 2008); *Spath*, 211 F.3d at 396.  Nevertheless, the "favor toward the nonmoving party does not extend to drawing inferences that are supported by only speculation or conjecture."  *Monroe v. Ind. Dep't of Transp.*, 871 F.3d 495, 503 (7th Cir. 2017) (internal

quotations and citations omitted).

The initial summary judgment burden of production is on the moving party to show the Court that there is no reason to have a trial. *Celotex*, 477 U.S. at 323; *Modrowski v. Pigatto*, 712 F.3d 1166, 1168 (7th Cir. 2013). Where the nonmoving party carries the burden of proof at trial, the moving party may satisfy its burden of production in one of two ways. It may present evidence that affirmatively negates an essential element of the nonmoving party's case, *see* Fed. R. Civ. P. 56(c)(1)(A), or it may point to an absence of evidence to support an essential element of the nonmoving party's case without actually submitting any evidence, *see* Fed. R. Civ. P. 56(c)(1)(B). *Celotex*, 477 U.S. at 322-25; *Modrowski*, 712 F.3d at 1169. Where the moving party fails to meet its strict burden, a court cannot enter summary judgment for the moving party even if the opposing party fails to present relevant evidence in response to the motion. *Cooper v. Lane*, 969 F.2d 368, 371 (7th Cir. 1992).

In responding to a summary judgment motion, the nonmoving party may not simply rest upon the allegations contained in the pleadings but must present specific facts to show that a genuine issue of material fact exists. *Celotex*, 477 U.S. at 322-26; *Anderson*, 477 U.S. at 256-57; *Modrowski*, 712 F.3d at 1168. A genuine issue of material fact is not demonstrated by the mere existence of "some alleged factual dispute between the parties," *Anderson*, 477 U.S. at 247, or by "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, a genuine issue of material fact exists only if "a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Anderson,* 477 U.S. at 252.

**III.    Facts**

The evidence and all reasonable inferences viewed in Babcock's favor establish the

following relevant facts.

In the early hours of March 17, 2019, Babcock was booked into the Jail and was placed in a holding call. That evening, Babcock dislocated his hip trying to slide off a bench in the holding cell. He was screaming in extreme pain. Defendant Huber/Griffin[1] called for assistance in the holding cell at 8:05 p.m., and defendant Hare responded to the call. Defendant Reichardt assisted Hare in the response.

When Hare arrived, Babcock told Hare he had had his left hip replaced in 2016 and 2018, and he "thought his left hip had come out of place." He told Hare he was unable to move his leg, but when Hare later completed an Incident Report, he stated that Babcock was moving around and putting pressure on his left foot. Jail Defs'. Mot. Sum. J., Ex. E, Lochard 0007-0008 (Doc. 53-5). Babcock was screaming in pain the entire time, but that is not noted in any record. Hare and Reichardt put Babcock in a wheelchair and took him to the infirmary. There was no nurse in the Jail at that time.

In the infirmary, Hare checked Babcock's vital signs (which were relatively normal) and completed an Illness Report starting at 8:41 p.m. Lochard's Mot. Sum. J., Ex. Lochard 0012 (Doc. 50-2). In the Illness Report, Hare underestimated the time Babcock had been in pain, but also noted his two prior hip replacements. Hare noted that Babcock moved his leg but also that he had "loss of function. . . ."

Hare called Dr. Lochard, who instructed Hare to give Babcock two Tylenol tablets and a bag of ice and to have him lay down until he could be seen in the morning by nursing staff. Hare followed Dr. Lochard's instructions. Hare and defendant Miller assisted Babcock in changing

---

[1] Babcock's Complaint names this defendant as Griffin and her name appears in the Incident Report as Griffin, but it appears her name is now Huber. To avoid confusion, the Court will refer to her by both names.

into jail clothing, photographed and fingerprinted him, and then placed him in a segregation cell with an extra blanket where he could lay down until morning. Hare then completed the aforementioned Incident Report describing the events. Dr. Lochard did not come to the Jail the following day, no one reported to him Babcock's continuing pain, and he had no more contact with or information about Babcock relating to this incident.

There is a dispute about exactly what Hare reported to Dr. Lochard when he called him from the Jail at approximately 8:41 p.m. on March 17, 2019. Dr. Lochard has no recollection of being told about Babcock's history of hip replacement or that Babcock had self-reported that his hip had come out of place. On the other hand, Hare claims he would have told Dr. Lochard all the information on the Illness Report, which includes Babcock's history of hip replacement. Hare Dep. 20:10-17 (Doc. 50-3). He also implied he would have reported to Dr. Lochard the information in the Incident Report, which includes Babcock's statement that he thought his hip had come out of place. Hare Dep. 32:15-20 (Doc. 50-3).

Babcock had, in fact, dislocated his left hip, which was an emergent situation that required immediate evaluation and treatment in a hospital. He was screaming and in excruciating pain all night. No nurse or doctor saw Babcock the following morning.

The following evening, March 18, 2019, Babcock was released on bond, at which point he was transported by ambulance to Alton Memorial Hospital because he was unable to walk. He was later transferred to Barnes-Jewish Hospital, where he had a hip reduction.

## IV.     Legal Standards

To show that conditions of confinement violated the Constitution, a plaintiff must prove two things. First, the conditions of confinement must be objectively serious enough to pose a substantial risk of serious harm; they must result in the denial of "'the minimal civilized measure

of life's necessities.'" *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)); *see Smith v. Dart*, 803 F.3d 304, 309 (7th Cir. 2015). Second, the official must have a sufficiently culpable state of mind. *Farmer*, 511 U.S. at 834.

Historically, the Court has applied to convicted prisoners and pretrial detainees the same Eighth Amendment test for deliberate indifference to the health needs of convicted prisoners. *See Miranda v. County of Lake*, 900 F.3d 335, 350-51 (7th Cir. 2018); *Burton v. Downey*, 805 F.3d 776, 784 (7th Cir. 2015). The test for an Eighth Amendment violation has two components, an objective and a subjective one. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). First, the need about which the inmate complains must be objectively serious. *Id.* Second, the defendant must have a sufficiently culpable state of mind, that is, he must at a minimum be deliberately indifferent. *Farmer*, 511 U.S. at 834. He is deliberately indifferent if he "knows of and disregards an excessive risk to inmate health or safety." *Id.* at 837.

The Court of Appeals for the Seventh Circuit, relying on the Supreme Court's decision in *Kingsley v. Hendrickson*, 576 U.S. 389 (2015), has since held that the objective reasonableness standard, not the deliberate indifference standard, applies to all Fourteenth Amendment conditions-of-confinement claims brought by pretrial detainees. *Hardeman v. Curran*, 933 F.3d 816, 823 (7th Cir. 2019). This includes claims of inadequate medical care. *James v. Hale*, 959 F.3d 307, 318 (7th Cir. 2020); *Miranda*, 900 F.3d at 352. *Miranda* held that the controlling inquiry in the medical context consists of two steps. The first step focuses on the intentionality of the defendant's conduct and asks "whether the medical defendant[] acted purposefully, knowingly, or perhaps even recklessly when he considered the consequences of his handling of [plaintiff's] case." *See Miranda*, 900 F.3d at 353. The second step asks whether the challenged conduct was objectively reasonable based on the totality of the circumstance faced by the

6

defendant. *Id*. at 354.

It is undisputed that Babcock was a pretrial detainee, so the Fourteenth Amendment's objective reasonableness standard applies.

## V.     Dr. Lochard's Motion for Summary Judgment (Doc. 50)

In Dr. Lochard motion for summary judgment, he does not contest that Babcock's dislocated hip was an objectively serious, even emergent, need for medical treatment. Instead, he argues that no evidence shows his response to that need was objectively unreasonable given his knowledge of the situation. Babcock maintains Dr. Lochard's response to the information Hare related to him over the phone was objectively unreasonable.

Viewing the facts in Babcock's favor, the Court must assume that Hare informed Dr. Lochard on the phone that Babcock had undergone two hip replacement surgeries, one in 2016 and one as recently as 2018, and that Babcock had self-reported that his hip had come out of place. Hare testified in his deposition that he reported to Dr. Lochard what was written in the Incident Report and the Illness Report, and those two statements were in those documents. Dr. Lochard was certainly aware that a dislocated prosthetic hip required emergency treatment, yet he did not entertain that possibility, instead treating Babcock's need as if it were non-emergent.

It is clear that Dr. Lochard's prescription of treatment for Babcock was purposeful after consideration of the facts he knew at the time. But based on those facts, a reasonable jury could find that his response—two Tylenol, ice, and laying down—was objectively unreasonable in light of the information Hare reported about Babcock's fairly recent hip replacement history and his self-report of dislocation. A jury could decide that the evidence suggested a dislocated hip, which a reasonable doctor would have known mandated immediate evaluation and treatment at a hospital. The failure to investigate further or direct care from an emergency room could be seen

as reckless disregard for Babcock's health.

The Court's conclusion might have been—and a reasonable jury's conclusion might be—different if it was established that Hare made a different, less comprehensive report on the phone to Dr. Lochard.  Tylenol, ice, and rest might have been reasonable treatment for some hip ailments.  But right now, there is a genuine issue of material fact about what hip ailment Hare described to Dr. Lochard.  That question must be left to a jury.

Dr. Lochard also claims he is entitled to qualified immunity, a proposition the Seventh Circuit Court of Appeals has squarely rejected.  *Shields v. Ill. Dep't of Corr.*, 746 F.3d 782, 794 (7th Cir. 2014) (private doctors working in prisons not entitled to qualified immunity).  He also suggests a good faith defense of similar parameters, but the Seventh Circuit has never adopted such a defense, and the Court declines to do so without direction from above.  *See Andrews v. Cnty. of Sangamon*, No. 18-CV-1100, 2021 WL 3733142, at *4 (C.D. Ill. July 1, 2021) ("The Court does not see how qualified immunity under a different name would be consistent with Seventh Circuit precedent denying qualified immunity to private contractors.").

For these reasons, the Court will deny Dr. Lochard's motion for summary judgment.

**VI.    Jail Defendants' Motion for Summary Judgment (Doc. 49)**

In the Jail Defendants' motion for summary judgment, they first argue that they properly addressed Babcock's medical needs by taking him to the infirmary, calling Dr. Lochard, and following Dr. Lochard's orders for treatment.  They further dispute whether there is evidence of the personal involvement of Reichardt, Huber/Griffin, Miller, Braun, and Lakin in the relevant events, noting that on occasion Babcock could not identify the names of the people he claims wronged him.  Finally, they argue Babcock has no evidence of a policy or custom of the Jail to support *Monell* liability.

A. <u>Personal Involvement</u>

The Court first addresses the Jail defendants' personal involvement because those arguments have some merit. "[I]ndividual liability under § 1983 . . . requires personal involvement in the alleged constitutional deprivation. The plaintiff must demonstrate a causal connection between (1) the sued officials and (2) the alleged misconduct." *Colbert v. City of Chi.*, 851 F.3d 649, 657 (7th Cir. 2017) (internal quotations and citations omitted).

As a preliminary matter, Babcock has not sued Lakin in his personal capacity, so his individual personal involvement is not relevant. In fact, he is no longer a defendant in this suit because current Sheriff Jeff C. Connor replaced him in the official capacity claims against him (Doc. 44). Babcock brought only official capacity claims against Lakin, and Connor has been substituted in those claims.

Other defendants appear to have played no role in the misconduct allegedly committed against Babcock. For example, the evidence shows only that Huber/Griffin recognized that Babcock was injured in the holding cell and called for help. The evidence shows only that Reichardt helped Hare get Babcock into a wheelchair so he could be transported to the infirmary. Even if those defendants laughed at or made fun of Babcock, the most that could be said was that they were behaving unprofessionally and unkindly, not unconstitutionally. And there is no evidence whatsoever of any activity by Braun related to Babcock's injury. For these reasons, Huber/Griffin, Reichardt, and Braun are entitled to summary judgment for lack of evidence of personal involvement in any wrongdoing.

Miller is a different story. Miller helped Hare transport Babcock to the infirmary and then to the segregation unit. He was present at the relevant times and a reasonable jury could find he could have done something to see that Babcock got sufficient medical care for his

9

dislocated hip. That is sufficient to establish personal involvement of Miller in Babcock's injury. Miller is not entitled to summary judgment for lack of personal involvement.

        B.        <u>Reasonableness of Care</u>

Babcock sues Hare and Miller, non-medical Jail employees, for the inadequacy of their medical care. Like Dr. Lochard, Hare and Miller are subject to the Fourteenth Amendment Due Process Clause's objective reasonableness standard. *See Hardeman v. Curran*, 933 F.3d 816, 823 (7th Cir. 2019); *McGee v. Parsano*, 55 F.4th 563, 569 (7th Cir. 2022). Under this standard, the plaintiff must prove the defendant's challenged conduct was objectively unreasonable without regard to the defendant's subjective state of mind. *McGee*, 55 F.4th at 569.

Where the detainee has sued a non-medical defendant for inadequate medical care, the Court recognizes the circumstances are different from when the detainee sues a medical defendant. This is because jails and other correctional facilities often separate the responsibilities of medical professionals to provide inmate healthcare from those of other security or administrative staff to keep the institution secure and in good order. *Id.*; *Miranda v. Cty. of Lake*, 900 F.3d 335, 343 (7th Cir. 2018). "When detainees are under the care of medical experts, non-medical jail staff may generally trust the professionals to provide appropriate medical attention," *Miranda*, 900 F.3d at 343, and may "defer to the professional medical judgments of the physicians and nurses treating the [inmate] in their care without fear of liability for doing so," *Berry v. Peterman*, 604 F.3d 435, 440 (7th Cir. 2010). This is so unless the non-medical officer "had reason to know that their medical staff were failing to treat or inadequately treating an inmate." *Miranda*, 900 F.3d at 343.

So ordinarily, Hare and Miller would be able to rely on the fact that they followed Dr. Lochard's telephone orders to say they responded reasonably to Babcock's injury. And indeed,

no evidence shows that Miller had any reason to question Dr. Lochard's treatment plan. Deference to medical staff is appropriate "even when an inmate is in obvious distress and even when the medical staff has misdiagnosed an inmate—or worse, accused him of faking a very real illness." *McGee*, 55 F.4th at 573 (*Miranda*, 900 F.3d at 343). So Miller's conduct in relying on Dr. Lochard was objectively reasonable.

Not so with Hare. He may have had very good reason to know Dr. Lochard was inadequately treating Babcock. Remember, the Court must take Dr. Lochard's version of his phone conversation with Hare as true for Hare's motion for summary judgment. Under that version, Hare did not convey to Dr. Lockard information that even a layperson would likely deem important—that Babcock had a history of his replacement in 2016 and again in 2018 and that Babcock self-reported a hip that had popped out. Also, viewing Babcock's testimony as true, he was screaming in agony the entire time, which Hare was bound to have heard since he spent a significant amount of time with Babcock that evening, yet he failed to report that to Dr. Lochard. Thus, Hare knew Dr. Lochard made his decisions without important medical history, self-diagnosis from someone who had experience with hip problems, and indications of extreme pain. The failure of Hare to report these things to Dr. Lochard was objectively unreasonable to begin with, and it gave Hare reason to doubt whether he could rely on Dr. Lochard's treatment decisions as adequate. A reasonable jury could find that Hare's knowingly incomplete report to Dr. Lochard and reliance on Dr. Lochard's subsequent treatment recommendation was objectively unreasonable.

For these reasons, Miller is entitled to summary judgment but Hare is not.

C. *Monell* Claim

To determine whether Sheriff Connor in his official capacity can be liable under § 1983,

11

the Court must look to municipal liability standards. *See Perkins v. Lawson*, 312 F.3d 872, 875 (7th Cir. 2002). A municipality may not be held vicariously liable for actions of its employees under § 1983 on a *respondeat superior* theory. *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690 (1978). It may be liable, however, for its own actions as a municipality. *Id.* at 690-92. A municipal action occurs where (1) the municipality had an express policy calling for a constitutional violation, (2) the municipality had a widespread practice of constitutional violations that was so permanent and well settled as to constitute a custom or usage with the force of law, or (3) if a person with final policymaking authority for the municipality caused the constitutional violation. *Id.* at 694. And the policy, custom, or decision must be the moving force behind the constitutional violation. *Id.*

Babcock asserts a policy or widespread practice of the Jail's not allowing inmates to be seen by an offsite doctor unless the inmate has a life-threatening condition. He claims an unnamed Jail officer told him that such a policy existed, and he asserts without specific examples other than himself that his experience shows the policy existed.

Babcock has not presented evidence from which a reasonable jury could find an express policy existed not to send inmates for outside care—such as in a hospital emergency room— unless they had a life-threatening condition. There is no evidence of an official written policy, and the statement by the unknown officer that such a policy existed is not enough to establish such a policy. Without knowing who the officer was and how they had personal knowledge of the policy, the statement would not be admissible, and inadmissible evidence cannot be used to withstand summary judgment, *Cairel v. Alderden*, 821 F.3d 823, 830 (7th Cir. 2016).

As for Babcock's contention that there was a widespread practice that was so permanent and well-settled as to constitute a custom with the force of law, that fails as well. To rely on this

12

theory, there must be evidence from which a reasonable jury could conclude that the Jail had a widespread practice that violated his constitutional rights and that the Jail policymakers knew of and acquiesced to the unconstitutional custom. *See Hildreth v. Butler*, 960 F.3d 420, 426 (7th Cir. 2020).

One or two instances of a violation are usually not enough to show a widespread practice, and a widespread practice is the "pivotal requirement" of such a claim. *Id.* (citing *Grieveson v. Anderson*, 538 F.3d 763, 774 (7th Cir. 2008)). Proving a custom requires "evidence of a prior pattern of similar constitutional violations." *Dean v. Wexford Health Sources, Inc.*, 18 F.4th 214, 234 (7th Cir. 2021); *Stockton v. Milwaukee Cnty.*, 44 F.4th 605, 617 (7th Cir. 2022) (plaintiff claiming widespread practice "must point to other inmates injured by that practice"). Here, there is no evidence that any other inmate at the Jail needed medical attention from an outside doctor but was not given that attention because his condition was not life-threatening. The existence of such a widespread custom is speculative, yet necessary to support a custom-based *Monell* claim.

It is true that municipal accountability for a policy of *inaction* can be shown by even one instance where a risk is so plainly apparent that a jury could find municipal policymakers must have known about it and did not do anything to avoid it. *See J.K.J. v. Polk Cty.*, 960 F.3d 367, 379 (7th Cir. 2020) (*en banc*); *Woodward v. Corr. Med. Servs. of Illinois, Inc.*, 368 F.3d 917, 929 (7th Cir. 2004). Under that theory, "evidence of a single violation of federal rights, accompanied by a showing that a municipality has failed to train its employees to handle recurring situations presenting an obvious potential for such a violation, could trigger municipal liability." *City of Canton v. Harris*, 520 U.S. 378, 409 (1989).

That theory does not apply in this case. Babcock is not alleging that the Jail did not adequately train its staff when to send an inmate to an outside doctor. The evidence shows that

13

correctional staff relied on medical personnel to make medical decisions about when an inmate needed care not available in the Jail.  And, as noted above, most of the time deference to medical personnel is appropriate and, indeed, is practiced.  The evidence does not show that such a practice includes an obvious potential for a constitutional violation such that different training or instruction by the Sheriff was necessary.

For these reasons, the Court will grant summary judgment for Sheriff Connor.

## V.     Conclusion

For the foregoing reasons, the Court:

- **DENIES** Dr. Lochard's motion for summary judgment (Doc. 50);

- **GRANTS in part** and **DENIES in part** the Jail Defendants' motion for summary judgment (Doc. 49) as follows:

    - Summary judgment is **GRANTED** for defendants Miller, Huber/Griffin, Reichardt, and Braun; and
    - Summary judgment is **DENIED** as to defendant Hare; and

- **DIRECTS** the Clerk of Court to enter judgment accordingly at the close of the case.

By separate order, the Court will set a telephone status conference to discuss dates for a Final Pretrial Conference and Trial for the remaining claims against Dr. Lochard and Hare.

**IT IS SO ORDERED.**
**DATED:  April 25, 2024**

                                        s/ J. Phil Gilbert
                                        **J. PHIL GILBERT**
                                        **DISTRICT JUDGE**